**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

RUTHIE MAE STEWART,

        Plaintiff,

vs.

GENERAL MILLS, INC., GENERAL
MILLS CEREALS, LLC, and
GENERAL MILLS OPERATIONS,
INC.,

        Defendants.

No. 08-CV-16-LRR

**ORDER**

---

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*   *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*  *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . **3**

*IV.*  *LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . **3**

*V.*   *FACTUAL FINDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    *A.*    *The Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    *B.*    *Plaintiff's Employment Background* . . . . . . . . . . . . . . . . . . . . **4**
    *C.*    *Attendance Policy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
        *i.*    *NC/NSs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
        *ii.*   *EDATs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    *D.*    *Peer Advocacy Process* . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
    *E.*    *Plaintiff's Attendance Record* . . . . . . . . . . . . . . . . . . . . . . . **9**
    *F.*    *Plaintiff Initiates Peer Advocacy* . . . . . . . . . . . . . . . . . . . . **11**
    *G.*    *Plaintiff Completes the Certification* . . . . . . . . . . . . . . . . . . **12**
    *H.*    *Plaintiff Appeals the Denial of Her FMLA Leave* . . . . . . . . . . . **12**
    *I.*    *General Mill Terminates Plaintiff's Employment* . . . . . . . . . . . **12**
    *J.*    *General Mills's Treatment of Other Employees' Attendance* . . . . . **13**
    *K.*    *Reed Group's Treatment of Other Employees' Attendance* . . . . . . **14**
    *L.*    *Plaintiff's Complaints of Race Discrimination* . . . . . . . . . . . . **14**
    *M.*    *Work Environment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

  N.  **Plaintiff Commences Administrative Action** . . . . . . . . . . . . . . . . **16**

**VI.** **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

  A.  **Claims Against General Mills, Inc. and General Mills, LLC** . . . . . **16**
  B.  **Title VII ClaimsAgainst General Mills** . . . . . . . . . . . . . . . . . . **17**
  C.  **ICRA Claims Against General Mills** . . . . . . . . . . . . . . . . . . . . **18**
    1.  **Race discrimination** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
      i.  **Whether "similarly situated" employees were**
        **treated more favorably under the Policy and**
        **Peer Advocacy** . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
      ii.  **Whether Plaintiff's work assignments constitute**
        **adverse employment action** . . . . . . . . . . . . . . . . . . . **24**
      iii.  **Whether General Mills's reason for terminating**
        **Plaintiff was pretextual** . . . . . . . . . . . . . . . . . . . . . **25**
    2.  **Retaliation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**
      i.  **Profanity** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**
      ii.  **Denial of EDATs** . . . . . . . . . . . . . . . . . . . . . . . . . **30**
    3.  **Harassment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **30**

**VII.** **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **33**

## I. INTRODUCTION

The matter before the court is the Motion for Summary Judgment ("Motion") (docket no. 14), filed by Defendants General Mills, Inc., General Mills Cereals, LLC and General Mills Operations, Inc. (collectively, "Defendants").

## II. RELEVANT PROCEDURAL BACKGROUND

On January 17, 2008, Plaintiff Ruthie Mae Stewart filed a Petition ("Petition") (docket no. 4) against Defendants in the Iowa District Court for Linn County. In the Petition, Plaintiff alleges Defendants (1) subjected her to race discrimination in the form of harassment, denial of benefits and termination of her employment and (2) terminated her employment in retaliation for her complaints concerning race discrimination. Plaintiff alleges these acts violate her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et seq.,* and the Iowa Civil Rights Act of 1965 ("ICRA"), Iowa Code chapter 216.

On February 11, 2008, Defendants removed the Petition to this court pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. On February 15, 2008, Defendants filed an Answer (docket no. 10), in which they deny the substance of the Petition.

On December 1, 2008, Defendants filed the Motion. On December 22, 2008, Plaintiff filed a Resistance (docket no. 20). On January 5, 2009, Defendants filed a Reply (docket no. 22).

Neither party requested oral argument on the Motion. The court finds the Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court holds it has federal question jurisdiction over Plaintiff's Title VII claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The court shall exercise supplemental jurisdiction over Plaintiff's state law claims, because they are so related to the claims over which the court has federal question jurisdiction that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]").

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine

issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. FACTUAL FINDINGS

When viewed in the light most favorable to the nonmoving party, Plaintiff, and affording her all reasonable inferences, the relevant facts are these:

### A. The Players

Plaintiff is a black woman and resident of Linn County, Iowa. General Mills Operations, LLC, formerly known as General Mills Operations, Inc. (collectively, "General Mills"), was Plaintiff's employer. General Mills, Inc. is a holding company that owns operating subsidiaries, including General Mills Operations, LLC. General Mills Cereals, LLC is a subsidiary of General Mills, Inc. General Mills, Inc. and General Mills Cereals, LLC do not have employees directly engaged in manufacturing operations.

### B. Plaintiff's Employment Background

General Mills hired Plaintiff to work at its Cedar Rapids facility in September of 1986. During her twenty years of employment with General Mills, Plaintiff held a variety of positions. During her last two years, Plaintiff worked in General Mills's fruit department as a third-shift Fruit Gushers Packaging Operator. Fruit Gushers are hexagon-shaped candies with a liquid center.

General Mills has a variety of jobs available to its fruit department employees. In

an effort to maintain fairness and consistency, employees in the fruit department bid on a specific job in order to express a preference for filling that position. Jobs are generally assigned on the basis of seniority. Each employee has a "primary" and "secondary" job. Depending on production and staffing needs, General Mills may require its employees to perform their secondary rather than their preferred or primary jobs.

In or around November of 2005, General Mills required Plaintiff to train in a secondary job. After her training on her secondary job was complete, however, General Mills did not return Plaintiff to her primary job for several weeks. At the same time, General Mills asked Plaintiff to train on second shift for a shift cleaning job. This request was limited to one shift—it was not a permanent change. General Mills asked other employees to train on a shift to which they were not normally assigned. Although Plaintiff wanted to refuse, she felt she was unable to do so because her supervisor could have negatively impacted her attendance record. Plaintiff believes she was treated unfairly in this situation and believes this training was unnecessary. Plaintiff reported to work for her single second-shift training for cleaning duties.

Plaintiff wanted to return to her primary job because the co-workers in her secondary job were unfriendly. Plaintiff believed that General Mills should have returned her to her primary job once her training was complete. Plaintiff believes that, by keeping Plaintiff in her secondary job after training was complete, General Mills was deviating from its procedure. Plaintiff was also concerned because the person who had replaced her in her primary job did not have Plaintiff's seniority. Plaintiff raised her concerns with Mark Munson, a supervisor, and informed him that she believed that her secondary job was "hostile." Defendants' Appendix ("Def. App'x") (docket no. 14-4), at 22. Plaintiff believed the environment in her secondary job was hostile because her co-workers did not communicate with her and did not work with her as a team member. General Mills returned Plaintiff to her primary job in December of 2005.

## C. Attendance Policy

General Mills has productivity objectives it must achieve to remain competitive. Regular, reliable employee attendance is critical to General Mills's ability to meet these productivity objectives. Excessive unplanned absences can strain the plant's operations by burdening some employees with additional work. These unplanned absences are particularly problematic when they occur with little or no advance notice.

General Mills has a policy ("Policy") on employee attendance that requires its employees to be at their workstations on time as scheduled. The Policy states: "When employees are unable to meet their work obligations, corrective action will be administered." Def. App'x, at 57. The Policy states that corrective action "will generally be in the form of first and second warnings initially, allowing the employee to realize the negative impact of absences on the operation and allow correction of the problem." *Id.* If "negative attendance behavior persist[s], additional progressive corrective action will be administered after management review[] in the form of an unpaid suspension, to reinforce the seriousness of the behavior and again allow the employee to correct it." *Id.* at 58. After completion of the unpaid suspension, General Mills places an employee on probation "for up to two years from the date of the employee's return to work from the attendance suspension." *Id.* (emphasis in original.) If an employee's "attendance behavior remain[s] unacceptable, termination may follow, after management review." *Id.* at 59.

A warning or corrective action "may not necessarily be given for one specific incident, but given instead based on the employee's 12 month attendance record." *Id.* at 59. Although General Mills tracks its employees' attendance "on a rolling 12-month cycle," it may track that attendance "on a 24-month or longer cycle." *Id.* In General Mills's review of an employee's attendance record, it considers the "length of time since [the employee's] last corrective action, patterns of absenteeism [. . .], length of time since [the] last infraction and previous record of unacceptable attendance[.]" *Id.*

6

Certain absences may lead to an "occurrence." An "occurrence" is any unscheduled absence, including personal sickness or illness days unless covered by General Mills's Medical Leave of Absence or Family Medical Leave Act ("FMLA") policies, tardiness, not calling in and not appearing for work, as well as absences for personal reasons.

The Policy sets forth the following corrective action for occurrences: (1) for the first through fifth occurrence, the employee receives his or her first warning; (2) for up to the eighth occurrence, the employee receives a second warning; and (3) for no more than ten occurrences, an employee may be suspended or terminated. The Policy is qualified by the following:

> [General Mills] may apply corrective action [in each] individual situation as appropriate. This may involve acceleration through the steps listed or the skipping of steps in the corrective action process.
>
> In addition, employees missing work for unscheduled absences other than a substantiated injury, illness or emergency may be moved ahead in the corrective action process with counseling from their Team Leader. This type of absenteeism improperly uses benefits and also demonstrates the employee's failure to uphold work obligations.

*Id.* at 59.

### 1.    NC/NSs

One type of absence that creates "a serious disruption to operations and other employees' plans" are "No call/No shows" ("NC/NSs"). *Id.* at 59. NC/NSs occur "when an employee does not call in and does not show up for scheduled hours." *Id.* NC/NSs are treated more seriously than other absences. "[NC/NSs], lying or other misuse of scheduled work time may result in more rapid movement in the corrective action process, or the skipping of steps in the process." *Id.*

### 2.    EDATs

As a benefit for its employees, General Mills maintains a policy regarding

Emergency Day-at-a-Time ("EDAT") vacation. The EDAT policy permits employees to retroactively qualify unplanned absences as "vacation" days and avoid an occurrence under the Policy. When deciding whether to designate an occurrence as an EDAT vacation, General Mills considers the following criteria: (1) existing vacation limits, because "EDAT will not be granted when vacation limits are full"; (2) the employee's attendance record, because "EDAT is not intended to cover attendance problems"; and (3) the nature of the emergency. *Id.* at 64. In the event an employee requests EDAT vacation for an occurrence and that employee is "at or above the First Warning level in the [Policy]," then the employee's reason for his or her absence "must be a critical emergency." *Id.*

General Mills's fruit department has special compliance provisions for EDATs. When an employee calls in and requests an EDAT, the absence is initially recorded as an absence. Within one working day of the employee's return to work, the employee must consult with his or her supervisor to review the EDAT request. If the EDAT request is approved, the absence will be converted into a vacation day. If the request is denied, the absence will stand.

### D. Peer Advocacy Policy

The General Mills facility in Cedar Rapids has a Peer Advocacy Policy ("Peer Advocacy") that allows employees to appeal General Mills's application of its plant policies, guidelines and procedures to ensure their proper and consistent application. Peer Advocacy is comprised of three steps. First, an employee submits an appeal and a manager responds to it by specifying the basis for the decision being appealed. The employee may accept the explanation or advance the appeal to the next level of management. Second, after conducting any necessary investigation, the next-level management issues a response to the appeal. The employee may accept this decision or take the third step and advance the appeal to the Peer Advocacy Panel ("Panel"). The Panel consists of five voting members: three peers of the employee and two non-peers of

the employee.  The employee may draw names of eligible Panel members and discard any potential Panel members the employee believes may be partial.   The decision of the Panel is final and binding.

### E.  Plaintiff's Attendance Record

On January 6 and January 11, 2005, Stewart had two unexcused absences and received two occurrences.   Her absence on January 11, 2005 constituted her fifth occurrence within the previous twelve months.  The five occurrences consisted of her absences of January 6 and January 11, 2005, plus three previous unexcused absences on May 21, June 1 and September 29, 2004.  In keeping with the Policy, General Mills gave Plaintiff her first warning.

On January 12, 2005, the day after receiving her first warning, and again on January 24, Plaintiff was absent from work due to weather.  Plaintiff requested EDAT vacation for those two absences.  General Mills granted her EDAT request.

On April 11 and 12, 2005, Plaintiff was absent from work due to a swollen lip caused by an allergic reaction.  Plaintiff notified General Mills of her condition in a timely manner.  Plaintiff requested EDAT vacation to cover these two absences; however, General Mills denied her EDAT request and assessed her two attendance occurrences, which brought her to a total of 4 occurrences.  General Mills encouraged Plaintiff to apply for FMLA leave for these absences, but Plaintiff did not seek FMLA leave because she did not believe that her condition qualified for FMLA leave.

On June 1, 2005, Plaintiff sought and was granted one day of EDAT vacation for the death of her brother.  Plaintiff was absent from work on October 5, 6, 11, 12, 13 and 14, 2005.  Plaintiff decided to seek FMLA leave for these absences.  In order to qualify for FMLA leave, Plaintiff's health care provider, Dr. Sharon Bertroche, faxed Plaintiff's Certification of Health Care Provider ("Certification") directly to General Mills's FMLA administrator, the Reed Group.  Plaintiff understood that, by Dr. Bertroche faxing the

Certification to the Reed Group, she had provided all paperwork necessary to qualify for FMLA leave. However, the Certification was missing Dr. Bertroche's signature page. Dr. Bertroche's office stated that the signature page was not included in the Certification paperwork. After the Reed Group realized the Certification was missing Dr. Bertroche's signature page, it twice attempted to contact Plaintiff on her home telephone to inform her of this issue. However, Plaintiff had previously instructed the Reed Group to contact her on her cellular telephone, since she worked evenings and could not answer her home telephone. Accordingly, Plaintiff did not check the voice messages from the Reed Group. In a letter dated November 3, 2005, the Reed Group informed Plaintiff that, due to the missing signature page, her FMLA request for October 2005 had been denied. Plaintiff advised General Mills management that she was going to challenge the Reed Group's decision. Accordingly, plant management did not immediately assess Plaintiff occurrences for her absences in October of 2005.[1]

On November 2, 2005, Plaintiff was absent from work and received another occurrence, bringing her total occurrences to 6. As of November 17, 2005, General Mills had not learned whether the Reed Group had or planned to reverse its decision to deny Plaintiff's FMLA leave requests for October of 2005. Accordingly, General Mills assessed Plaintiff with six occurrences for those absences. This brought Plaintiff to a total of 12 occurrences.

Because the Policy provides that an employee is subject to suspension or termination once that employee has ten occurrences, General Mills suspended Plaintiff from work for

---

[1] Plaintiff disagrees that General Mills's management refrained from assessing her with occurrences *because* she was challenging the Reed Group's decision. Plaintiff argues that General Mills has not indicated whether it was required to assess Defendant with any occurrences if such a request was denied. This is incorrect. This fact is supported by the Affidavit of Michael Murdock (docket no. 14-4), at 103,¶ 18. Plaintiff provides no evidence to dispute this fact.

one day, on November 17, 2005.

On November 18, 2005, Plaintiff returned from her suspension. At that time, General Mills provided Plaintiff with a Conditions of Continued Employment ("CCE") memorandum. The CCE conditioned Plaintiff's continued employment with General Mills on her understanding that "each and every future occurrence" would subject her to further discipline, including termination. Plaintiff executed the CCE that day. However, Plaintiff did not agree with the basis for the CCE and understood that, if she refused to sign the CCE, General Mills would terminate her employment.

Attached to the CCE was an addendum ("Addendum") summarizing Plaintiff's attendance history. Plaintiff drafted a response to the Addendum and only challenged the denial of her EDAT requests in April of 2005. Plaintiff did not challenge the denial of her FMLA leave requests in October of 2005.

### F. Plaintiff Initiates Peer Advocacy

On November 21, 2005, Plaintiff initiated Peer Advocacy by appealing her suspension in November of 2005, the occurrences from October of 2005 and the CCE. Plaintiff appealed these matters all the way to the Panel. Plaintiff selected Panel members consistent with the process discussed above. Plaintiff met with the Panel and explained the circumstances giving rise to the denial of her FMLA leave—the missing signature page—as well as the resulting suspension and CCE. The Panel concluded that General Mills's policies and practices were properly applied to Plaintiff.

Plaintiff believes the Peer Advocacy process was discriminatory because Mike Murdock, her supervisor, was involved with it. Mr. Murdock was an individual responsible for General Mills's denial of Plaintiff's EDAT requests for her swollen lip. Plaintiff was unable to confront Mr. Murdock during the Panel hearing. Plaintiff believes Mr. Murdock "fabricate[d] his side of the issues to the [Panel] without any ability on the part of [Plaintiff] to speak to those fabrications." Plaintiff's Response to General Mills's

Facts (docket no. 20-2), at ¶ 80.

Plaintiff claims that General Mills's Peer Advocacy response to her CCE appeal was racially discriminatory, because she believes another white employee, Dan Murphy, had a CCE and the Panel overturned it. Plaintiff does not know whether the same five panelists comprising her panel were the same as Mr. Murphy's. Mr. Murphy shared his Peer Advocacy and Panel experience with Plaintiff. According to Plaintiff, Mr. Murphy told Plaintiff that he was going to be suspended but the Panel reversed its decision because "Mike Murdock lied right in [Mr. Murphy's] face" and because he "caught Mike Murdock in a lie." Def. App'x at 48-49.

### G. Plaintiff Completes The Certification

On November 21, 2005, Plaintiff filed the completed signature page from the Certification with the Reed Group. Plaintiff asked Dr. Bertroche to complete the missing signature page after she learned that her FMLA leave had been denied. Dr. Bertroche completed the missing form expeditiously and noted that the Certification that had been provided to her in October of 2005 was missing the signature page.

### H. Plaintiff Appeals the Denial of Her FMLA Leave

On November 30, 2005, Plaintiff appealed the Reed Group's denial of her FMLA leave by filing an appeal with the Reed Group—not General Mills. In this appeal, Plaintiff explained that the signature page had been missing from the original Certification she had provided to Dr. Bertroche. Plaintiff explained that Dr. Bertroche had completed the Certification as provided to her, which was missing the signature page. Plaintiff also explained that the Reed Group had failed to contact her cellular telephone, as she had previously asked them to do and as the Reed Group had previously done. Initially, the Reed Group did not reverse its denial of her FMLA leave.

### I. General Mills Terminates Plaintiff's Employment

Despite the conditions set forth in her CCE, Plaintiff reported to work late on

December 2, 2005. Plaintiff acknowledges that, under the terms of the CCE, General Mills could have terminated her employment at that point. However, rather than terminate her employment, General Mills assessed Plaintiff with another occurrence—her thirteenth.

On February 28, 2006, Plaintiff was scheduled to commence work at 11:00 p.m. Plaintiff failed to report for work on time that day and did not contact management to inform it that she would be late or absent. Plaintiff's team leader telephoned Plaintiff at her home to inquire about her absence. Plaintiff informed General Mills that she had overslept due to her use of a new migraine medication. As a result of this NC/NS and in light of her attendance record as a whole, General Mills terminated Plaintiff's employment on March 8, 2006.

### J. General Mills's Treatment of Other Employees' Attendance

Plaintiff argues that General Mills treats white employees with attendance issues similar to Plaintiff's more favorably than Plaintiff. Plaintiff identifies Mark Noe as one such employee. Mr. Noe had absences on the following dates, all of which followed Plaintiff's termination: December 12, 2006, December 20, 2006, December 21, 2006, January 4, 2007 and January 5, 2007. In the Motion, General Mills contends that it assessed occurrences for each of these absences against Mr. Noe. However, in a letter to the Cedar Rapids Civil Rights Commission ("CRCRC") dated May 23, 2007, General Mills stated that Mr. Noe's "paperwork was in order and his FMLA leave approved by General Mills's third-party administrator, the Reed Group." Plaintiff's Ex. 6 (docket no. 20-10), at 2.

Plaintiff also identifies Karen Pegump as an employee who General Mills treated more favorably under the Policy. Approximately eleven years ago, General Mills terminated Ms. Pegump's employment for attendance issues, then later re-hired her. General Mills's attendance policies have changed since that time. Plaintiff also believes Nancy Davis, a white employee, was granted EDAT vacation due to the death of a dog.

Plaintiff also believes that two other white employees, Brad Koenig and Charles Shorty, were treated more favorably by General Mills concerning approval of their EDAT requests. Finally, Plaintiff believes that numerous other employees were late for work and that their tardiness was so "open and obvious" that her supervisors should have seen it. Plaintiff's Response to Defendants' Statement of Facts (docket no. 20-2), at ¶ 68.

### K.  Reed Group's Treatment Of Other Employees

Plaintiff identifies two employees for whom the Reed Group reversed an initial denial of a FMLA leave request: Dan Clark and LaTonya Lipscomb. Both of these employees are black. Plaintiff does not know why Mr. Clark's FMLA request was denied, but recalls that Mr. Clark informed her that he threatened to involve a lawyer in the process and the Reed Group reversed its denial. As for Ms. Lipscomb, the Reed Group reversed its denial of her FMLA leave due to an error the Reed Group made in processing her request.

### L.  Plaintiff's Complaints of Race Discrimination

Plaintiff recalls two instances in which she complained to General Mills about race discrimination. Her first complaint followed a suspension in April of 2000. General Mills had suspended Plaintiff after an altercation with one of Plaintiff's co-workers, June Cunningham, in which Plaintiff had used "the 'F' word." Def. App'x at 16. Ms. Cunningham reported to her supervisor that she felt threatened by Plaintiff. Plaintiff was suspended for this reported conduct. Plaintiff complained that her suspension for this incident was unfair, because another employee who had choked a co-worker was not suspended. Plaintiff met with plant management and complained that her suspension was unfair. Following this meeting, Plaintiff's discipline was reduced to a written warning and she was paid for the day she was suspended from work.

Plaintiff made her second complaint in April of 2005 in regards to General Mills's denial of Plaintiff's request for EDATs during that month for her swollen lip. Plaintiff

spoke with one of her supervisors about this incident. The supervisor indicated that management had not believed Plaintiff. Plaintiff testified that she "implied" to management that this adverse employment action was due to race-based discrimination. Def. App'x at 17-18.

### M. Work Environment

Plaintiff testified that she was subjected to the following hostile treatment at work by her co-workers: working in less desirable positions or areas without explanation; ignoring jams in Plaintiff's production machinery; yelling; failing to inform Plaintiff of changes in procedures; intentional sabotage of Plaintiff's production line; threatening Plaintiff with an attendance occurrence for her refusal to comply with a training demand necessitating overtime; and suffering co-workers' jokes about Plaintiff's complaint to management concerning her co-workers' mistreatments. Plaintiff provided the following deposition testimony explaining her belief that this treatment was racially motivated:

> Q.    Is it fair to say that the incidents that we've been talking about today, you believe that they were racial, or because of your race, simply because the other people involved were not black?
>
> A.    Yes.

Def. App'x at 53.

Plaintiff also testified that her supervisors' conduct made her work environment hostile. Plaintiff testified that one supervisor ignored her and did not interact with her on the production line for a significant amount of time and another supervisor suggested she transfer to another department. Plaintiff also complained that her supervisors discriminated against her by making her work in her non-primary job despite the fact that she was senior to other employees who were not made to work in a different department. She also feels her bumping rights, her right to "bump" a junior employee from a certain position she wanted, were not honored at some point in 1995.

15

### N. Plaintiff Commences Administrative Action

On May 17, 2006, Plaintiff filed a Charge of Discrimination ("Charge") with the Iowa Civil Rights Commission ("ICRC") and cross-filed her Charge with the CRCRC and the United States Equal Employment Opportunity Commission ("EEOC"). The Charge alleges that General Mills discriminated against Plaintiff on the basis of race, color and sex. In the Charge, Plaintiff states that she believes her "termination was based upon [her] complaints of having to work in a hostile work environment, unfairly forced out of [her] work space and duties on the basis of race, and [her] complaints of repeated harassment and discrimination due to race." Def. App'x at 66.

The CRCRC reviewed the Charge and determined there was no probable cause to determine Plaintiff was a victim of race or sex discrimination. On April 11, 2007, the EEOC adopted the CRCRC's findings and issued a Notice of Dismissal and Right to Sue ("Notice"). The Notice advised Plaintiff that any federal discrimination claims needed to be filed within ninety days of Plaintiff's receipt of the Notice. On October 26, 2007, the ICRC issued a Letter of Right-to-Sue ("Letter") advising Plaintiff that she was required to file a lawsuit based on the Charge within ninety days of the issuance of the Letter.

## VI. ANALYSIS

Plaintiff alleges claims of race discrimination and retaliatory discharge under both Title VII and the ICRA against Defendants. The court shall first address Plaintiff's claims against General Mills, Inc. and General Mills, LLC. Then, the court shall address Plaintiff's Title VII claims against General Mills. Lastly, the court will address Plaintiff's ICRA claims against General Mills.

### A. Claims Against General Mills, Inc. and General Mills, LLC

Defendants present evidence that General Mills, Inc. and General Mills Cereals, LLC never had an employment relationship with Plaintiff. Plaintiff does not dispute this fact. Title VII creates prohibitions on unlawful activities for "employers." 42 U.S.C.

§ 2000e. The ICRA similarly prohibits unlawful practices to persons in employer-type positions. Iowa Code § 216.6(1)(a). Neither General Mills, Inc. nor General Mills Cereals, LLC has had the requisite employer or employer-type relationship with Plaintiff. Accordingly, the court shall dismiss General Mills, Inc. and General Mills, LLC from the instant action.

## B. Title VII Claims Against General Mills

The sole remaining defendant, General Mills, argues Plaintiff's Title VII claims are untimely. Title VII states that a plaintiff seeking to litigate a Title VII claim must file his or her claim within ninety days after receiving a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1).[2] If a plaintiff files a Title VII claim after this deadline, the court must dismiss the claim as untimely. *See Williams v. Thomson Corp.*, 383 F.3d 789, 790 (8th Cir. 2004) (affirming dismissal of plaintiff's Title VII claims because plaintiff filed Title VII claim more than ninety days after the EEOC's issuance of a right to sue letter). "'Generally, the ninety-day filing period begins to run on the day the right to sue letter is received at the most recent address that a plaintiff has provided to the EEOC.'" *Id.* at 791 (quoting *Hill v. John Chezik Imp.*, 869 F.2d 1122, 1124 (8th Cir. 1989)).

On April 17, 2007, the EEOC issued the Notice. The Notice advised Plaintiff that she needed to file any federal discrimination claim within ninety days of her receipt of the Notice. However, Plaintiff did not file the instant action until January 17, 2008, approximately five months after the filing deadline had passed.

Plaintiff does not dispute the untimely nature of her Title VII claims. Indeed, Plaintiff admitted these claims were untimely in her "Voluntary Dismissal" (docket no. 17), in which Plaintiff sought to dismiss her Title VII claims in violation of the Federal

---

[2] This statute was modified by the recently enacted Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (S 181) (January 29, 2009). This legislation pertains to discriminatory compensation, which is not at issue in the instant action and does not affect the court's analysis.

Rules of Civil Procedure and the court's local rules. *See* Order (docket no. 19) (striking the Voluntary Dismissal because it violated Federal Rule of Civil Procedure 41(a) and local rules 7.b.4, 7.d and 7.l). Because Plaintiff's Title VII claims are untimely, the court shall dismiss them.

## C. ICRA Claims

Plaintiff alleges claims of race discrimination and retaliation under the ICRA. It is unclear whether Plaintiff also alleges a violation of the ICRA for General Mills's alleged denial of her bumping rights in 1995. Out of an abundance of caution, General Mills argues this claim is untimely. Plaintiff does not resist this argument. In any event, the court agrees that any such claim is untimely under the deadline applicable in Iowa Code § 216.15(12), which now requires a complaint for discrimination to be filed within 300 days of the discriminatory or unfair practice. The court shall address both of these claims, in turn.

### 1. Race discrimination

The parties agree that, because Plaintiff does not have any "'direct evidence of discrimination,' she must 'create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)' in order to survive a motion for summary judgment." *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1140 (8th Cir. 2008) (quoting *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007)).[3] Plaintiff bears the burden of establishing a prima facie case of discrimination. *Id.* To do so, Plaintiff must show: "(1) she is a member of

---

[3] The parties agree that federal cases provide the basic framework for deciding discrimination cases under the ICRA. *See Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1380 (8th Cir. 1996) (stating that federal cases may be used as a guide to determine sex discrimination claims under the ICRA). "[F]ederal courts may decide a state law claim based on a judicial estimate of what the Iowa Supreme Court would do if confronted with the same issue." *Id.* (citing *Heeney v. Miner*, 421 F.2d 434, 439 (8th Cir. 1970)).

a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) 'similarly situated employees outside the protected class were treated differently.'" *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) (quoting *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir. 2004)).  If Plaintiff establishes a prima facie case, General Mills "must produce 'a legitimate, non-discriminatory reason for the adverse employment action.'" *Id.* (quoting *Tolen*, 377 F.3d at 882)).  If General Mills is successful, "'the presumption raised by the prima facie case disappears, and the burden shifts back to [Plaintiff] to show that the articulated reason was a pretext for discrimination.'" *Id.* (quoting *Tolen*, 397 F.3d at 882).

Plaintiff argues that General Mills engaged in racial discrimination against her through its application of the Policy, work assignments and Peer Advocacy.  General Mills argues that Plaintiff's racial discrimination claim fails as a matter of law because Plaintiff: (1) cannot satisfy her prima facie case for racial discrimination arising out of the Policy and Peer Advocacy because she cannot show General Mills treated similarly situated non-black employees more favorably; (2) cannot satisfy her prima facie case for race discrimination arising out of her work assignments because there was no adverse employment action relating to her work assignments; and (3) has no evidence that General Mills's proffered reason for terminating Plaintiff, her repeated violations of the Policy, is pretextual.

### i.     *Whether similarly situated employees were treated more favorably under the Policy and Peer Advocacy*

Plaintiff argues that General Mills assessed eight of her thirteen occurrences for racially discriminatory reasons.  More specifically, Plaintiff argues that General Mills denied two of her EDAT requests and six of her FMLA leave requests because she is black.  For purposes of the Motion, General Mills concedes the first three elements: Plaintiff is a member of a protected class, was meeting legitimate job expectations and

suffered an adverse employment action.  General Mills argues that Plaintiff cannot carry her burden on the fourth element of her prima facie case—that her employment was terminated under circumstances in which similarly situated employees outside the protected class, that is, non-black employees, were treated more favorably.

To determine whether an employee is similarly situated, the Eighth Circuit Court of Appeals follows the "low-threshold standard." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005).  Under the low-threshold standard, Plaintiff must show that she and another employee "were 'involved in or accused of the same or similar conduct and were disciplined in different ways.'" *Id.* (quoting *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004)).

First, Plaintiff argues that Mark Noe is a similarly situated white employee who was not assessed occurrences for absences resulting from a denial of FMLA leave requests. The court agrees with Plaintiff that General Mills sets forth two inconsistent sets of facts concerning Mr. Noe's FMLA leave requests: (1) that Mr. Noe's FMLA leave requests were denied and that he received five attendance occurrences as a result of these denials; and (2) that Mr. Noe's FMLA paperwork was in order and that his FMLA leave requests had been approved by the Reed Group.  However, this discrepancy does not strengthen Plaintiff's position.  When the court discredits this evidence, as urged by Plaintiff, she is left without evidence that Mr. Noe's FMLA leave requests were approved or denied, the reasons for any such approval or denial or the circumstances surrounding any such approval or denial. Stated another way, even if the court gives no weight to General Mills's explanations concerning Mr. Noe's FMLA leave requests, Plaintiff is left with only her unsupported conclusory allegations that Mr. Noe was treated more favorably than she. Conclusory allegations do not meet the obligation of a party opposing summary judgment to go beyond the pleadings and "by affidavits or as otherwise provided in" Rule 56, "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the

opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.* As the nonmoving party, Plaintiff "'must substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). Plaintiff bears the burden to show she is similarly situated to another employee. *Pope v. ESA Servs, Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005). Plaintiff has not provided any evidence with respect to Mark Noe's FMLA leave request. Accordingly, the court finds that Plaintiff has failed to meet the fourth element of her prima facie case.

Second, Plaintiff argues that General Mills treated Ms. Davis, a white employee, was treated more favorably under its EDAT leave policy. More specifically, Plaintiff states that Ms. Davis's EDAT requests were approved for the death of a dog, while Plaintiff's EDAT leave request for a swollen lip was denied. Plaintiff argues that this shows that General Mills treats non-black similarly situated employees more favorably than black employees. As an initial matter, the court notes that, aside from her unsupported conclusory allegations in her deposition, Plaintiff has not provided any evidence surrounding the circumstances of Ms. Davis's absence, including whether she was absent, when she was absent, why she was absent or whether General Mills granted her EDAT request. On this basis alone, the court can and does disregard this allegation. Fed. R. Civ. P. 56(e)(2). Even if Plaintiff had provided evidence that General Mills granted Ms. Davis an EDAT request for the death of her dog, however, this would not satisfy the similarly situated requirement. *See Maulding v. Sullivan*, 961 F.2d 694, 697-98 (8th Cir. 1992) (holding a plaintiff who requested relief from job duties due to medical reasons was not similarly situated to an employee who requested relief from job duties due to inability to handle job responsibilities). Accordingly, the court shall not consider Ms. Davis to be similarly situated to Plaintiff.

Third, Plaintiff argues that the Reed Group reversed an initial denial of FMLA leave

for Ms. Lipscomb and Mr. Clark, two black employees, and that this conduct somehow supports her position. However, individuals within a plaintiff's protected class cannot be similarly situated for the purpose of establishing a prima facie case of discrimination. *See Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (holding that members of plaintiff's protected class cannot be similarly situated for purposes of race discrimination analysis); *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 994, 1005 (N.D. Iowa 2007) (Reade, C.J.) (stating that, to satisfy a plaintiff's prima facie case, similarly situated employees must be outside the plaintiff's protected class). The court finds that Ms. Lipscomb and Mr. Clark are not similarly situated to Plaintiff.

Fourth, Plaintiff argues that Ms. Pegump is a similarly situated white employee who, despite being terminated due to her attendance problems, was re-hired. The court finds that Karen Pegump is not similarly situated to Plaintiff for purposes of this analysis, since her termination occurred over a decade ago and under a different attendance policy. Further, Plaintiff's allegations concerning Ms. Pegump are merely conclusory and are limited to Plaintiff's suggestion that Ms. Pegump received more favorable treatment. Plaintiff provides no actual evidence of the circumstances of Ms. Pegump's termination and re-hire, such as to the nature, number or circumstances of Ms. Pegump's absences.

Plaintiff also asserts that General Mills treated various other similarly situated employees more favorably than Plaintiff under the EDAT policy. These employees include Brad Koenig, Charles Shorty, Dale Edaburn and Jerry Schlesselman. Like Plaintiff's other efforts to identify similarly situated employees, Plaintiff's evidence that these employees are similarly situated is based on mere conclusory allegations and her belief that "there were no blind or deaf supervisors and the supervisors were in a position to see employees coming in late."[4] Plaintiff's Statement of Facts (docket no. 20-3), at ¶ 7. In her

---

[4] Plaintiff claims that she identified these individuals who received more favorable (continued…)

deposition, Plaintiff admitted to her lack of knowledge concerning these employees when she stated that she has no first-hand knowledge of certain employees' attendance issues, is unaware whether the supervisors of certain employees knew about these alleged attendance issues, that she was not keeping track of the attendance of certain employees and was unaware whether these employees made arrangements to excuse their attendance issues. These conclusory allegations fall well below the summary judgment requirement and fail to designate any specific facts showing a genuine issue for trial.

Plaintiff also argues that General Mills discriminated against her in the Peer Advocacy process by allowing Mr. Murdock to speak to the Panel in Plaintiff's absence. General Mills argues in the Motion that Plaintiff cannot show that General Mills treated similarly situated employees more favorably. In an effort to show otherwise, Plaintiff identifies Dan Murphy, a white employee, who she argues received more favorable treatment in the Peer Advocacy process. However, Plaintiff provides no evidence of the nature or circumstances of his appeal. Without any basis to compare Mr. Murphy's Peer Advocacy experience with Plaintiff's, the court cannot determine whether he was similarly situated to her. The court also notes that Plaintiff has presented no evidence that Mr. Murphy's panelists were the same as her panelists, or that Mr. Murdock somehow influenced or lied to the Panel.

In conclusion, the court finds that Plaintiff has failed to satisfy the fourth element of her prima facie case as to attendance—a showing that General Mills treated similarly situated employees outside the protected class more favorably than Plaintiff.

---

[4](...continued)

treatment under the EDAT policy, citing "Plaintiff's Rule 26A Disclosures." Plaintiff's Response to Defendants' Statement of Facts at ¶ 70. This document does not appear to have been submitted to the court.

### ii.    *Whether Plaintiff's work assignments constitute adverse employment action*

General Mills argues that Plaintiff cannot satisfy her prima facie race discrimination case concerning her work assignments because there is no adverse employment action associated with it. Plaintiff does not mention, much less resist, these arguments in her Brief in Resistance.

The Eighth Circuit Court of Appeals described "adverse employment action" as follows:

> An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet this standard, as are circumstances amounting to a constructive discharge. Changes in intangible employment conditions may also constitute an adverse employment action. Nevertheless, not everything that makes an employee unhappy is an actionable adverse action. For example, a job reassignment involving no corresponding reduction in salary, benefits, or prestige is insufficient to establish an adverse employment action. Additionally, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy this prong.

*Buboltz v. Res. Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008) (internal citations and quotation marks omitted).

Plaintiff has not provided any evidence that her temporary reassignment to train for her secondary job or to train for cleaning on second shift caused her any materially significant disadvantage. Stated another way, Plaintiff has not suggested or submitted evidence that her temporary reassignment caused a reduction in salary, benefits or prestige. At most, Plaintiff has proven that she was unhappy with her temporary reassignment. By itself, this is insufficient to establish adverse employment action. The court finds that

Plaintiff has failed to satisfy her prima facie case for racial discrimination concerning the Peer Advocacy process.

In conclusion, the court finds that Plaintiff has failed to show that there is a genuine issue of material fact on the elements of her prima facie case for race discrimination. Accordingly, the court shall dismiss Plaintiff's race discrimination claim on this basis.

### iii. Whether General Mills's reason for terminating Plaintiff's employment was pretextual

Even if Plaintiff had satisfied her prima facie case for race discrimination, the court would nevertheless dismiss this claim because she failed to argue or present evidence showing that General Mills's reason for terminating Plaintiff was pretextual. After a plaintiff has satisfied the elements of a prima facie race discrimination case, the employer must "articulate[] a legitimate, non-discriminatory reason for firing the plaintiff." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006). The Eighth Circuit Court of Appeals has "consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee." *Id.* at 935 (citing *Putnam v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 1998)). "'This burden is one of production, not persuasion; it can involve no credibility assessment.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Eighth Circuit Court of Appeals identifies this as a "non-onerous burden." *Montes v. Greater Twin Cities Youth Symphonies*, 540 F.3d 852, 858 (8th Cir. 2008) (citing *Pope*, 406 F.3d at 1007).

General Mills argues that the reason it terminated Plaintiff's employment was due to Plaintiff's repeated violations of the Policy. Plaintiff was aware of the Policy and her violations of it. These repeated violations of the Policy led to Plaintiff's accumulation of 13 attendance occurrences in the relevant time period. Plaintiff was suspended due to her attendance and, upon returning to work, signed the CCE. The CCE expressly advised Plaintiff that further occurrences would subject her to further discipline, including termination. Nevertheless, Plaintiff incurred two additional occurrences after she signed

the CCE, one of which was a NC/NS. Regular, reliable employee attendance is critical to the success of General Mills's business, and Plaintiff does not dispute that she incurred these two occurrences that ultimately led to her termination. Attendance problems constitute a legitimate, non-discriminatory reason for termination. *See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1037 (8th Cir. 2005) ("[E]xcessive absences [. . .] constitute a legitimate, nondiscriminatory reason for discharge[.]"). The court concludes that General Mills has proferred a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

Plaintiff argues her attendance problems are merely pretext for General Mills's racial discrimination. "To prove pretext, a plaintiff must both discredit an employer's asserted reason for termination and show that the circumstances permit drawing the reasonable inference that the real reason for terminating the plaintiff was her race." *Twymon*, 462 F.3d at 935 (citing *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005)). "'The ultimate burden falls on [Plaintiff] to produce evidence sufficient to create a genuine issue of material fact regarding whether [General Mills's] proferred nondiscriminatory justifications are mere pretext for intentional discrimination.'" *Montes*, 540 F.3d at 858 (quoting *Pope*, 406 F.3d at 1007).

Plaintiff argues there is a genuine issue of material fact regarding the reason General Mills terminated Plaintiff's employment, which is demonstrated by General Mills's more favorable treatment of white employees under the EDAT policy and the FMLA policy. Plaintiff emphasizes the discrepancy concerning General Mills's records of Mr. Noe's FMLA requests. Plaintiff argues that General Mills's "inconsistent explanations surrounding Mark Noe's FMLA requests and Defendant's more lenient treatment of other employees, such as [Mr.] Noe, who are not black, are sufficient to raise material issues of fact regarding Defendant's explanation for [Plaintiff]'s termination." Brief in Resistance (docket no. 20-1), at 18.

No reasonable inference establishes Plaintiff's claim. As discussed above, Plaintiff has no evidence that General Mills treated white employees more favorably than her under either the EDAT policy or the FMLA policy—only her unsupported conclusory allegations. The court acknowledges that confusion concerning Dr. Bertroche's signature on the Certification, which resulted in six of Plaintiff's thirteen occurrences, may be unfair. However, civil rights laws are not written to guarantee fairness. *See Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005) ("[Plaintiff] would have us decide this case on the basis of fairness, not evidence of racial discrimination. This, of course, we cannot do."). In a nutshell, Plaintiff has not proffered anything other than her own unsupported conclusory allegations that Mr. Noe and other white employees were treated more leniently than Plaintiff. This cannot create a disputed issue of material fact. *See Shanklin*, 397 F.3d at 603 (stating that plaintiff's mere "bald assertions" contradicting her employer's facts "is insufficient to create a genuine issue of material fact, where such assertions are totally unsupported by the record").

Accordingly, the court finds that Plaintiff cannot show that General Mills's reason for terminating her employment—her repeated violations of the Policy—is pretextual. For this reason, the court shall dismiss the race discrimination claim.

### 2. *Retaliation*

In the Petition, Plaintiff alleges that she "was harassed by supervisors, was denied benefits she was entitled to receive and was ultimately discharged in retaliation for her complaint concerning race discrimination[.]" Petition at ¶ 2. There is no direct evidence of any retaliatory motive at issue; therefore, in assessing Plaintiff's retaliation claim on summary judgment, the court again applies the *McDonnell Douglas* burden-shifing framework. *See Culton v. Mo. Dep't of Corr.*, 515 F.3d 828, 830 (8th Cir. 2008) (applying *McDonnell Douglas* framework in retaliation claim in absence of direct evidence of retaliatory motive). "'A prima facie case of retaliation requires showing that: (1) the

employee engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.'" *Recio v. Creighton Univ.*, 521 F.3d 934, 938-39 (8th Cir. 2008) (quoting *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007)). "[I]f Plaintiff puts forth a prima facie case, [General Mills] 'may rebut the resulting presumption of discrimination by articulating a legitimate, non-retaliatory reason for the adverse employment action.'" *Jones*, 490 F. Supp. 2d at 1007 (quoting *Twymon*, 462 F.3d at 936. Then, "if Defendant offers a legitimate, non-retaliatory reason, Plaintiff 'may attempt to refute the asserted reason as mere pretext.'" *Jones*, 490 F. Supp. 2d at 1007 (quoting *Twymon*, 462 F.3d at 936).

General Mills does not dispute the first two elements of Plaintiff's prima facie case: Plaintiff engaged in protected conduct and a reasonable employee would find Plaintiff's termination from employment to be adverse. General Mills argues, however, that Plaintiff's retaliation claim fails because Plaintiff has no evidence showing her employment was terminated because she complained of race discrimination. General Mills further argues that, even Plaintiff could show causation, she cannot show its reason for terminating Plaintiff is pretextual. The court notes that Plaintiff does not resist this argument and does not substantively dispute its underlying facts.

Plaintiff alleges General Mills retaliated against her for two complaints of race discrimination. First, Plaintiff claims General Mills retaliated against her in 2000, because it disciplined her for use of "the 'F' word." Second, Plaintiff claims General Mills retaliated against her in 2005 because she "implied" that she thought General Mills's denial of her EDATs was race-based. The court examines each of these complaints, in turn.

### i. *Profanity*

Plaintiff's first complaint of retaliation clearly does not satisfy the causation requirement under the *McDonnell Douglas* framework. Plaintiff has shown no evidence

that she was terminated because she complained that her suspension in 2000 was race-based. There is no temporal proximity between Plaintiff's first complaint and her termination. In April of 2000, Plaintiff complained to Defendant's management that her suspension for use of "the 'F' word" was race-based. Plaintiff was not fired until 2006—six years after she made the complaint. "'Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established.'" *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1149 (8th Cir. 2008) (quoting *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir. 2005)). In *Van Horn*, the Eighth Circuit Court of Appeals found that an eight-month lapse between a complaint and the adverse action weighed heavily against a finding of causation. *Van Horn*, 526 F.3d at 1149. Certainly a six-year lapse weighs more heavily against a finding of causation. When this lack of temporal proximity is combined with Plaintiff's failure to provide any evidence of causation, it is clear that Plaintiff cannot establish that her complaint of race-based discrimination in 2000 caused Defendant to terminate her employment.

Defendant also argues that Plaintiff cannot show that Defendant's proffered reason for her termination, poor attendance, is false and that retaliatory animus is the real reason Defendant terminated her employment. "To prove pretext, [a plaintiff] must both discredit [an employer]'s asserted reason for the demotion and show the circumstances permit drawing a reasonable inference that the real reason for [her] demotion was retaliation." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 911 (8th Cir. 2007). Plaintiff cannot satisfy either requirement. Although Plaintiff disputes that her absences justified termination, Plaintiff does not dispute that these absences, in fact, occurred. Further, Plaintiff has not proffered any evidence that would permit the court to draw a reasonable inference that the real reason for her termination was due to Defendant's retaliation for her complaint in 2000.

Accordingly, the court finds that Plaintiff's complaint of race-based discrimination in 2000 cannot form the basis of a retaliatory discharge claim.

### ii. Denial of EDATs

Plaintiff testified that, in April of 2005, she "implied" to plant management that she felt Defendant's denial of Plaintiff's EDAT requests was race-based. Def. App'x at 17-18. This purported complaint of race-based discrimination fails to satisfy the first element of a prima facie retaliation case: that Plaintiff engaged in protected conduct. "Protected activity 'includes opposing ongoing discriminatory treatment.'" *Wiehoff v. GTE Directories Corp.*, 61 F.3d 588, 598 (8th Cir. 1995) (quoting *Wentz v. Md. Cas. Co.*, 869 F.2d 1153, 1154-55 (8th Cir. 1989)). Plaintiff provides no resistance to General Mills's argument that statutorily protected conduct occurs when a plaintiff specifically complains about discriminatory treatment. *See* Brief in Support of Motion at 18, n.4; *Wiehoff*, 61 F.3d at 598 (finding plaintiff failed to establish retaliation when complaints to management did not include allegations of unlawful discrimination); *Genosky v. Minnesota*, 244 F.3d 989, 993 (8th Cir. 2001) (affirming dismissal of retaliation claim because, "although [plaintiff] complained about unfair treatment, she cannot establish that she complained about unlawful discriminatory treatment," and therefore, could not "establish that she opposed an unlawful employment practice"). In her deposition, Plaintiff testified that she merely "implied" that her complaint relating to denial of EDATs was race-based. Absent an actual, rather than "implied" complaint of adverse treatment, no protected activity exists. Plaintiff's retaliation claim based on her complaint regarding the denial of EDATs therefore fails to satisfy the first element of her prima facie case.

In conclusion, the court finds that Plaintiff's retaliation claim should be dismissed.

### 3. Harassment

In her race discrimination and retaliation claims, Plaintiff alleges she was "harassed by supervisors[.]" Petition at ¶¶ II.2 & III.2. General Mills devotes substantial analysis

to argue that there is insufficient evidence of an objectively hostile work environment, mandating the dismissal of Plaintiff's "harassment claim." Plaintiff does not resist these arguments in her Resistance; however, in her Response to General Mills's Statement of Facts, she purports to resist certain facts relating to this argument.

The Eighth Circuit Court of Appeals has established the following test for a hostile work environment claim:

> To establish a hostile work environment claim, [Plaintiff] must show (1) [she] is a member of a protected class, (2) [she] was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic under Title VII, (4) the harassment affected a term, condition or privilege of employment, and (5) employer liability.

*Al-Zubaidy*, 406 F.3d at 1038 (citing *Willis v. Henderson*, 262 F.3d 801, 808 (8th Cir. 2001)). "There can be no doubt federal harassment standards are demanding." *Id.* (citing *McCurdy v. Ark. State Police*, 375 F.3d 762, 768 (8th Cir. 2004)). In determining whether a work environment is hostile, the district court must examine all circumstances of that environment, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000) (internal quotation marks omitted). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (quoting *Faragher v. City of Boca Raton*, 542 U.S. 775, 788 (1998)). "[T]he Supreme Court has 'made it clear that conduct must be extreme

to amount to a change in the terms and conditions of employment.'" *Al-Zubaidy*, 406 F.3d at 1038 (quoting *Faragher*, 542 U.S. at 788). "The Supreme Court also has made it abundantly clear that the 'standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code."'" *Id.* (quoting *Faragher*, 542 U.S. at 788).

The court holds that Plaintiff has failed to resist any "harassment" argument and shall dismiss it on this basis. Even if Plaintiff had resisted this claim, it lacks merit. The court first considers Plaintiff's harassment claim in the context of her co-workers. Plaintiff complained that her co-workers created a hostile work environment when they forced her to work in less desirable positions without explanation, ignored jams in Plaintiff's production machinery, yelled at her, failed to inform her of changes in procedures, intentionally sabotaged her production line, threatened her with an attendance occurrence if she refused to comply with a training demand necessitating overtime and joked about Plaintiff's complaint to management concerning their treatment of her.

At most, Plaintiff has provided evidence of "personality conflicts" with her co-workers, which is insufficient to establish a harassment claim. *Palesch*, 233 F.3d at 567. "'Not all unpleasant conduct creates a hostile work environment. Rather the plaintiff must show that she was singled out because of her gender or race, and that the conduct was severe and pervasive.'" *Id.* (quoting *Williams v. City of Kansas City, Mo.*, 223 F.3d 749, 753 (8th Cir. 2000)). Plaintiff has not provided any evidence that she was singled out by her co-workers because of her race.

Plaintiff's complaints involving her supervisors are equally without merit. Plaintiff testified that one of her supervisors ignored her, one suggested that she transfer to a different department and that another forced her to work in her secondary job. Deliberately ignoring an employee does not constitute harassment. *See Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006) ("To be actionable, the

conduct complained of must be extreme in nature and not merely rude or unpleasant."). Asking or suggesting that Plaintiff transfer to another department or work her secondary job is not harassing. As discussed above, this sort of transferring between departments is not uncommon and has a valid business purpose. Discrimination laws are not intended to review the propriety of an employer's business decision. *Tuttle v. Mo. Dep't of Agric.*, 172 F.3d 1025, 1032-33 (8th Cir. 1999) ("[the court] may not second-guess an employer's personnel decisions, and we emphasize that employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully"). Plaintiff has submitted no evidence indicating the requests or suggestions made to her were racially motivated.

Accordingly, the court finds that Plaintiff's harassment claim relating to her supervisors is without merit and shall dismiss it.

## VII. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion (docket no. 14) is **GRANTED** and the Petition (docket no. 4) is **DISMISSED**.

**IT IS SO ORDERED.**

**DATED** this 11th day of February, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA